|111    203|
|142    588|

|111    203|
|151    608|

## *In re* SEYMOUR'S ESTATE.

WILLS—UNDUE INFLUENCE—EVIDENCE.

Evidence that one of testator's sons had attended largely to his father's business, and that the father, who was a man of advanced age, had stated that he could not do as he wanted to, and that he was afraid of his son, and did not know how to make his will in the son's absence; together with evidence of a statement of another son, who was a large beneficiary under the will, that they had got it fixed, and that the sisters would get nothing,—is sufficient to go to the jury on the question of undue influence.

Error to Wayne; Hosmer, J. Submitted November 10, 1896. Decided December 18, 1896.

George and Walter Seymour presented for probate the will of their father, Joseph Seymour, deceased. Sarah Newton and others, daughters of deceased, appealed to the circuit court from an order probating the will. From a judgment for contestants, proponents bring error. Affirmed.

*Henry M. Cheever* and *Edward P. Allen*, for appellants.

*James H. Pound*, for appellees.

GRANT, J. Joseph Seymour died testate in 1894, leaving two sons and four daughters. His will was executed February 9, 1894, when he was very ill. He was 80 years old, and died a few days after the execution of the will. He died seised of 80 acres of land, and left but little personal property. He devised one 40-acre lot to his son Walter, and the other 40 to his son George. To his daughters, all of whom were married, he bequeathed $100 each, and charged his sons with the payment thereof. The daughters contested the will, charging incompe-

tency and undue influence. The case was submitted to the jury upon both theories. Upon which ground the jury set the will aside does not appear. It is conceded that there was evidence of incompetency introduced by the contestants, and evidence of competency introduced by the proponents. No complaint was made of the correctness of the instruction given to the jury, provided there was any evidence of undue influence; the proponents insisting that there was no such testimony, and that the court should have so instructed the jury. It seems unfortunate, in cases of this kind, that juries should not be required to state on what ground their action is based.

The deceased was living with a second wife, with whom he had lived 23 years. His sons lived in their own homes, near by. George married the daughter of his stepmother. Neither of the boys nor the wife of the deceased was present when the will was executed. George and Walter both testified that they knew nothing of the contents of the will until it was read to them and their sisters a few days after the father's death. The testimony upon the question of incompetency is not before us. The record of 120 pages contains all the testimony bearing upon the question of undue influence. This testimony was directed mainly to prove that George had for some time attended largely to his father's business; that the deceased had made statements showing that he was afraid of his wife and of his son; that George had ordered one of the daughters out of his father's house, saying that she was after his property; that her father had said that he could not do as he wanted to; that he said he did not know how to make his will, and he wished George were there; that Walter said, at the time the will was read, and one of the sisters remarked that George must have known something about the will before, that "they had got it fixed; that they came loaded, cocked, and primed, and they had got it fixed, that we [the sisters] would never get a cent of it." There was other testimony of a similar character. We are unable to say from this record

that there was no evidence of undue influence. The undue influence sufficient to set aside a will must depend to some extent upon the physical and mental condition of the testator. The two are usually intimately connected. What would be undue influence in a case of physical and mental weakness would not be undue influence where he was in the full possession of his mental faculties.

We think the case was properly submitted to the jury, and the judgment must be affirmed.

LONG, C. J., MONTGOMERY and HOOKER, JJ., concurred. MOORE, J., did not sit.