Emma J. Eldred executed what purported to be her last will and testament on January 10, 1921. She died on August 3, 1924. The instrument was presented for probate, and, after a hearing on the objections filed, an order denying probate was entered on December 2, 1924. An appeal was taken to the circuit court by the executrix named therein, who was also a legatee. On trial in the circuit, the instrument was disallowed by the jury. The proponent here reviews the judgment there entered by writ of error. While both mental incompetency and undue influence were relied upon by contestant to defeat the will, the court withdrew the former from the consideration of the jury. Proponent moved for a directed verdict, and also for judgment notwithstanding the verdict, on the ground of the lack of sufficient proof of undue influence. Error is assigned on the denial of these motions.
1. Undue Influence. The testatrix was a widow, 62 years of age at the time the instrument was executed. Her husband died in 1914. They had at that time a daughter, Ethel, the contestant herein, and a son, who died soon after without heirs. The estate of the father was administered by Ethel. She also looked after her mother's estate in most part until her death. In 1918, Ethel was married to a school-teacher named Wilfred Nevue. They lived in the farm home with the testatrix, renting the farm from her. There is proof of strained relations between testatrix and Nevue. The proponent, Dr. Alice J. Vinton, was an intimate friend of the family, and attended the testatrix many times during the ten years preceding her death. She was taken to a hospital in 1919, and treated for nervous troubles. After her daughter's *Page 133 
first child was born, in 1920, the testatrix went with the doctor to her home for a visit, but, as the doctor testified, asked to remain and pay her board. She stayed there until Ethel and her husband vacated the home in January, 1921.
In the meantime, and soon after she went to the Vinton home, the doctor accompanied her to the office of the probate court and inquired of the register, Mr. Dalton, "if there was something that could be done in regard to arranging Mrs. Eldred's affairs." The appointment of a guardian was discussed. Mr. Dalton suggested that the testatrix remain at the Vinton home and the doctor could act as her agent. Dalton had advised with the testatrix on several former occasions, and had drawn a will for her in 1918, in which the bulk of her property had been given to her daughter, Ethel. After the talk with Dalton, Dr. Vinton accompanied Mrs. Eldred to the office of the Michigan Trust Company, where she signed a paper giving the doctor access to her safety deposit box. The doctor soon after informed the daughter that she was acting under a power of attorney from the deceased. Some months later she accompanied the testatrix to the law office of Mr. Powers, where the will in question was prepared and executed. Mr. Powers had never seen the testatrix before. The doctor was present during the time the will was prepared.
In this will she bequeathed to her daughter, Ethel, the sum of $10; to Ethel's young daughter $5; to several other relatives and friends sums ranging from $100 to $400, and to Dr. Vinton the sum of $500. The residue of her estate was bequeathed to Dr. Vinton in trust to convert the same into money and invest it in good securities and to pay to her sister-in-law, Mrs. Hutchings, the income thereof during her life, and on her decease to pay to the United Brethren College at *Page 134 
Huntington, Indiana, $1,000, and the balance to the Foreign Missionary Society of the United Brethren in Christ, of Dayton, Ohio. Dr. Vinton was named as executrix in the will.
Shortly after the will was executed the testatrix returned to her own home. She was later committed to the Detention hospital, and afterwards to the Kalamazoo State hospital, where she died on August 3, 1924. The Michigan Trust Company was appointed guardian of her estate. Its report shows that at the time of her death she left real estate valued at $8,400, and personal property valued at $3,880.18, a total of $12,280.18.
In Re Hartlerode's Estate, 183 Mich. 51, 60, it was said:
"There are certain cases in which the law indulges in the presumption that undue influence has been used, as where a patient makes a will in favor of his physician, a client in favor of his lawyer, or a sick person in favor of a priest or spiritual adviser, whether for his own personal advantage, or for the advantage of some interest of which he is a representative."
The reasons for the rule thus announced are discussed at length by Mr. Justice STONE and many authorities cited in its support. See, also, In re Bailey's Estate, 186 Mich. 677;Pritchard v. Hutton, 187 Mich. 346; In re Browne's Estate,217 Mich. 621.
The relationship which existed between the doctor and the deceased, and the circumstances under which the will was executed, justify the application of this rule in this case. The only proof offered by the proponent tending to rebut this presumption was her own testimony and that of two neighbors, who were old friends of the deceased. The doctor testified that she never talked to the deceased about how she should dispose of her property; that the deceased told her she wanted to make a will, and asked her what lawyer she employed; that she told her Mr. Powers had drawn *Page 135 
a contract for her some years before, and she said, "Well, take me to that man." Mrs. Ketchall testified that deceased talked to her about making a will before she went to Dr. Vinton's home, and said she wanted to make a will so that her daughter couldn't get it if her husband "was alive or living with her," and said she was going to divide her property between her "friends and the church. She was going to give a lot of it to the church." Celia Smith testified that the deceased, when visiting her during the time she was at Dr. Vinton's, said that the doctor was "her friend and adviser;" that "she was glad she had made a will, because she had things fixed up, she thought, satisfactorily." But she also testified that deceased said, "well, I guess, more than once, that she had made her will, and that Dr. Vinton had advised her to make this will." Mr. Johnson, an attorney of Grand Rapids, connected with the Michigan Trust Company, testified that the deceased consulted him several times about her property matters after she had left the home of Dr. Vinton; that she wanted him to bring a suit against the doctor, claiming she had sold an automobile belonging to her without authority, and that when he suggested writing to the doctor about it she said, "It won't do any good," and that on several occasions she said to him, "I want you to draw a will for me."
It is clearly apparent that the deceased was not in good health at the time she went to Dr. Vinton's, and that her mind was beginning to weaken.
"The undue influence sufficient to set aside a will must depend to some extent upon the physical and mental condition of the testator. The two are usually intimately connected. What would be undue influence in a case of physical and mental weakness would not be undue influence where he was in the full possession of his mental faculties." In re Seymour's Estate,111 Mich. 203, 205.
We have not overlooked the many cases cited and *Page 136 
quoted from in proponent's brief, including the recent case ofIn re Bulthuis' Estate, 232. Mich. 129. In our opinion, they are not controlling on the facts presented on this record. Proponent's motion for a directed verdict was properly denied.
2. Charge of the Court. Error is assigned on several extracts from the charge of the court. In it he cast the burden of proof on the contestant to maintain the charge of undue influence. We have read it with care, and we think it fully and fairly stated the claims of the respective parties and the rules of law by which the jury should be governed in their deliberations.
The judgment is affirmed, with costs to appellee.
BIRD, C.J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.