293 P.2d 682

In the Matter of the ESTATE of Wilda Gail SWAN, deceased.

Theo Swan HENDEE, Plaintiff and Respondent,

v.

WALKER BANK & TRUST COMPANY, Executor of the Last Will and Testament of Wilda Gail Swan, deceased; Grant Macfarlane, Daniel Kostopulos and Ada Bridge, Defendants and Appellants.

No. 8246.

Supreme Court of Utah.

Feb. 15, 1956.

Rawlings, Wallace, Roberts & Black, N. J. Cotro-Manes, LeGrande P. Backman, Salt Lake City, for appellant.

Paul H. Ray, Grant C. Aadnesen, Athol Rawlins, Salt Lake City, for respondent.

WADE, Justice.

Theo Swan Hendee, plaintiff and respondent here, contests the will and codicils of Wilda Gail Swan, which were admitted to probate June 25, 1952. Theo is an older

sister and sole heir of Gail who died May 28, 1952, at age 62 without issue and unmarried. The will was signed May 2, 1947, the first codicil signed February 20, 1950, and the second codicil was signed April 23, 1951. These instruments were all drawn by Grant Macfarlane, as her attorney and confidential adviser. They devised to Theo only a small portion of her estate, leaving to Macfarlane and Daniel Kostopulos, whom the trial court also found was a confidential adviser of Gail, the major part of her estate. The contest is based on the allegations that at the time of signing these instruments Gail, (1) lacked testamentary capacity, and (2) was acting under fraud and undue influence of Macfarlane and Kostopulos. The trial court found both issues in favor of Theo and against Macfarlane and Kostopulos, who bring this appeal on the sole ground that the evidence is not sufficient to support such findings.

■ A will contest being an action at law [1] we are bound by the trial court's findings unless such findings are unreasonable in view of all of the evidence and all reasonable inferences therefrom when considered in the light most favorable to supporting the judgment.[2] So we will examine the evidence in such light to see whether the trial court's findings are reasonably deducible therefrom.

1. We first consider the finding that Gail lacked testamentary capacity at the time she signed the will and codicils. These instruments are very brief and not burdened with confusing legal terms nor complicated descriptions and the various tracts of real estate are described merely by street numbers. The estate which the state inheritance tax appraisers valued at $281,115.92 consisted of eight tracts of real estate, two items of personal property and the residue.

■ This court is committed to the proposition that mere eccentricities or inability to conduct a business, whether for lack of training or for lower than normal mental capacity does not prove incapacity to make a will. The true test is, "if he is able to remember who were the natural objects of his bounty, recall to mind his property, and make disposition of it understandingly, according to some purpose or plan formed in his mind" [3] he has testamentary capacity. With this in mind we will consider the evidence.

1. In re Hanson's Estate, 87 Utah 580, 52 P.2d 1103; In re Swan's Estate, 51 Utah 410, 170 P. 452.

2. See Lovett v. Continental Bank & Trust Co., 4 Utah 2d 76, 286 P.2d 1065, 1067 and 1068; my concurring opinion in State v. Prettyman, 113 Utah 36, 49 and 50, 191 P.2d 142, 147; and my dissent in

Henrie v. Rocky Mountain Packing Corp., 113 Utah 415, 432, 196 P.2d 487, 496.

3. The quotation is from Coleman v. Marshall, 263 Ill. 330, 342, 104 N.E. 1042, 1046; quoted with approval in In re Buttars' Estate, Utah, 261 P.2d 171, 173; In re Hanson's Estate, 87 Utah 580, 608, 52 P.2d 1103, 1116–1117; see also In re Swan's Estate, 51 Utah 410, 170 P. 452.

Gail was born in Salt Lake City in 1890 of parents of considerable means. She attended school as a child of normal health until she was about eleven, when she showed signs of nervousness, and about a year later in 1902, and frequently thereafter she suffered violent epileptic seizures. She was then taken out of school and deprived of the normal associations with persons of her age until after she was twenty-seven, when medical treatment became available which substantially controlled the seizures, and for the rest of her life she was up and about most of the time and participated in the business and social life of the family. Her mother died in 1931, when she was forty-one, thereafter she lived with her father until his death in 1950. Theo lived in the family home until she graduated from high school, when she went to college, and later, from 1911 to 1913, she taught school. She married in 1914, and in 1922 she and her husband moved from the east to San Francisco where he was a newspaper editor, and they were socially prominent. Both girls received substantial bequests from their grandfather, and property by direct deed from their father. Such are the sources of this estate. The girls visited with each other, corresponded, and sometimes communicated by telephone. There is some evidence that indicated differences between them. Gail resented receiving clothes from Theo, seemed to envy her social prominence, and her married life. She asked her friends and business associates not to tell Theo about her business and said she was not going to leave her much. The evidence indicates that Gail was anxious to have and retain the friendship and social contact with men.

There is little conflict in the testimony as to events, occurrences and conditions, but a wide difference of opinion of opposing counsel on what inferences should be drawn therefrom. A number of medical doctors testified for each side including two psychiatrists. Most of them treated Gail during her lifetime, and two of them made special examinations of her at the time she executed the last codicil, which they witnessed, to determine whether she had testamentary capacity. All agreed that her mental capacity was below the normal adult person, but that she was not insane or feeble-minded. There is nothing in their testimony which indicates that she was unable to remember the natural objects of her bounty, recall her property or understandingly dispose of it, and practically all of their testimony was definitely to the contrary. The same is true of the testimony of the many lay witnesses.

It was shown without substantial contradiction that when she executed the will and codicils Gail could read and write, carry on correspondence, go about the city alone and take care of ordinary business and social affairs. She owned rental property many years before her father's death. He deeded her about $200,000 worth of property several years prior to his death without appointing a trustee or guardian to help

her manage it. Prior to 1948 or 1949 she managed and collected the rentals from her property, but thereafter she retained the aid of the property management department of a banking institution in these matters. During such times she supervised and changed the managing institution and signed numerous leases and rental contracts which the evidence indicates she did with intelligence and understanding. She carried bank accounts in her own name, knew the location and nature of her properties and the rentals therefrom, keeping a book account thereof. She kept herself neat and clean, visited her hair-dresser regularly and was able to discuss current events and general affairs in the usual manner. She played the piano and the harp. She played canasta regularly with a group of women and with friends; she attended baseball games regularly and one time gave a dinner to the Salt Lake team.

Some of her actions did suggest subnormal behavior. At times she was unusually generous or improvident in making loans or gifts to her friends. These matters were only occasional and did not indicate she did not understand what she was doing. She promised or suggested to various persons that she would make them beneficiaries under her will. Besides promising and making Macfarlane, Kostopulos and Ada Bridge such beneficiaries, she suggested to at least three male business associates that she would make them beneficiaries of her will, but each of them declined. There was also testimony that the first time she met the husband of one of her friends she asked him how he would like to manage all her property; that she would poke men in the ribs on short acquaintance and that she often giggled and acted childish. This evidence when considered separately or all together does not indicate a lack of testamentary capacity, but at most merely indicates a slightly below normal adult mental age. It does not indicate that she did not remember the natural objects of her bounty or did not keep in mind her property or lacked the ability to dispose of it understandingly in accordance with some purpose or plan. This is especially true in view of the volumes of evidence to the contrary. The contestant had the burden of proving or persuading the trier of the fact by the evidence that she lacked testamentary capacity. We conclude that in view of all of the evidence the finding of the trial court that she lacked testamentary capacity was unreasonable and must be reversed.

I acknowledge the help of Judge HOYT, who has made a very careful study and analysis of the evidence and the law in this case.

2. On the other hand, the second finding that the bequests to Macfarlane and Kostopulos were induced by fraud and undue influence must be affirmed. Where a confidential adviser is made the beneficiary in a will, receives gifts or possible benefits from transactions with the person who relies on his advice and counsel on

such matters in the making or execution of which he actively participates, a presumption of fraud and undue influence arises, which shifts the burden of persuading the trier of fact that there was no fraud or undue influence. Macfarlane was clearly Gail's confidential adviser in making this will and the codicils, for he drew each of them while acting as her attorney. The trial court found that Kostopulos was also her confidential adviser on these matters at the time when the instruments were executed, which made him a beneficiary. The evidence shows that Macfarlane and Kostopulos were acquainted with each other and were both interested in receiving bequests from her. It is reasonable to infer from those facts that Macfarlane failed to give her disinterested independent advice on the Kostopulos bequest for fear of losing thereby the bequest to himself. There is no contention that such finding was not supported by the evidence. These findings gave rise to the presumption of fraud and undue influence which shifted the burden of persuasion on to them and eliminated the necessity of proof other than the basic facts of the presumption to support the finding.

▆▆ Ordinarily the burden of persuasion, as distinguished from the burden of making a prima facie case from which the fact finder could reasonably find the issue in his favor, is on the party whose claim for relief depends on the existence of such fact. Usually such party must plead and prove the existence of such fact in order to prevail. Some situations, usually the result of a presumption, require the party who does not have the burden of persuasion to produce prima facie evidence of the nonexistence of such fact in order to support a finding in his favor on such issue. Where only the burden of producing prima facie evidence is shifted, upon the satisfaction of such burden the other party still has the burden of persuading or convincing the fact finder that the facts in such issue are in his favor, and in case the fact finder is not convinced, he should find the facts on such issue against such party. Such a finding is made against the party who fails to satisfy his burden even though there is no evidence to the contrary. In other words, the court must find the facts against a party who fails to satisfy his burden and such finding does not have to be supported by positive evidence.[4] Since this presumption shifted the burden of persuading or convincing the trial court that there was no fraud or undue influence onto Macfarlane and Kostopulos, although they clearly made a prima facie showing, the finding against them on that issue must be approved be-

4. See my concurring opinion in Gibbs v. Blue Cab, Utah, 249 P.2d 213, 218; Lawrence v. Bamberger R. Co., 3 Utah 2d 247, 282 P.2d 335; Ray v. Consolidated Freightways, 4 Utah 2d 137, 289 P.2d 196, 200–201; Malstrom v. Consolidated Theatres, 4 Utah 2d 181, 290 P.2d 689; McCormick on Evidence, 635–639, 668–686; 9 Wigmore on Evidence, sections 2483–2498 and 2499–2550.

cause it indicates that the trial court was not convinced that the facts are in their favor.

The fact that Gail had testamentary capacity makes it more probable that she was not induced to make these bequests by fraud or undue influence. The facts that she was raised without the normal associations with people; that she never married; that she developed a desire for social contact and openly indicated her willingness to make gifts and bequests to those who associated with and befriended her could be regarded as indicating that she wanted to make such bequests of her own free will. On the other hand, the fact that her mentality was below the normal mature person and her desire for social contact indicate she might be an easy prey to fraud and undue influence.

There is a conflict in the Utah cases on the effect of the presumption arising from a confidential adviser receiving gifts, bequests or other possible benefits from his dealings with the person confiding in him. Some cases indicate that such presumption does not shift the burden of persuasion but only shifts the burden of making a prima facie showing that no fraud or undue influence was exercised whereupon the presumption is eliminated and the issue thereafter must be determined on the evidence the same as if no presumption had arisen.[5] Although all of those cases are distinguishable from this one on their facts, at least two of them directly so hold.[6] This is the Thayerian theory and except as to one presumption was adopted in the American Law Institute's Model Code of Evidence.[7] Un-

5. Miller v. Livingstone, 31 Utah 415, 88 P. 338; In re Bryan's Estate, 82 Utah 390, 25 P.2d 602; In re George's Estate, 100 Utah 230, 112 P.2d 498, and In re Lavelle's Estate, Utah, 248 P.2d 372.

6. Miller v. Livingstone, In re George's Estate, supra, note 5.

7. The American Law Institute's Model Code of Evidence was adopted May 15, 1942, but has not been adopted as the law in any jurisdiction. The Uniform Rules of Evidence was drafted by the National Conference of Commissioners on Uniform Laws, using the Model Code as a basis from which to work, at the same time attempting to make it more acceptable for present day practice. It was approved by the Commissioners August 17–

22, 1953, and by the American Bar Association August 28, 1953. The Utah Rules Committee appointed by the Supreme Court to study and make recommendations on the adoption of Rules of Evidence for this state is considering these two drafts together but generally follow the pattern of the Uniform Rules of Evidence. Section 704 of the Model Code adopts the Thayerian theory of presumptions which was advocated by Wigmore but is contrary to the recommendations of Edmond M. Morgan who was the reporter for the A.L.I. in drafting the Model Code. Thayer and Wigmore recognized that there were so-called presumptions which shifted the burden of persuasion and even required clear and convincing evidence or proof

**286**

der such rule the trial court's finding of fraud and undue influence probably is not supported by the evidence, but if the burden of persuasion is shifted the finding is supported by proof of the basic facts of the presumption.

beyond a reasonable doubt to overcome, but argued that they were more than presumptions because they did more than shift the burden of making a prima facie case. The Uniform Rules adopted Morgan's theory set out in Rule 14 as follows:

"Rule 14. Effect of Presumptions. Subject to Rule 16, and except for presumptions which are conclusive or irrefutable under the rules of law from which they arise, (a) if the facts from which the presumption is derived have any probative value as evidence of the existence of the presumed fact, the presumption continues to exist and the burden of establishing the non-existence of the presumed fact is upon the party against whom the presumption operates, (b) if the facts from which the presumption arises have no probative value as evidence of the presumed fact, the presumption does not exist when evidence is introduced which would support a finding of the non-existence of the presumed fact, and the fact which would otherwise be presumed shall be determined from the evidence exactly as if no presumption was or had ever been involved."

It also adds Rule 16, which reads as follows:

"Rule 16. Burden of Proof Not Relaxed as to Same Presumptions. A presumption, which by a rule of law may be overcome only by proof beyond a reason-

██ Some opinions in this court have held that the only effect of a presumption is to place on the disfavored party the burden of producing prima facie evidence to the contrary and thereupon the presumption is eliminated,[8] and it is firmly established

able doubt, or by clear and convincing evidence, shall not be affected by Rules 14 or 15 and the burden of proof to overcome it continues on the party against whom the presumption operates."

The Utah Rules Committee has tentatively adopted Rules 13 to 16 inclusive which are the Uniform Rules of Evidence on presumptions but have added to the end of Rule 16, the following sentence: "A presumption created by statute may be overcome only by the quantum of proof required thereby, or, if no quantum of proof is specifically required by the statute, by a preponderance of the evidence." Since the facts from which this presumption is derived have probative value as evidence of the presumed fact, these recommendations would shift the burden of persuasion under this presumption.

This case falls within the provisions of Rule 14, subdivision (a) above, for here the facts from which the presumption is derived have probative value as evidence of the existence of the presumed fact, and it shifts the burden of persuasion onto the party against whom it operates.

8. See my concurring opinion in In re Pilcher's Estate, 114 Utah 72, 87 and 88, 197 P.2d 143, 150 and 151; Peterson v. Sorenson, 91 Utah 507, 531, 65 P. 2d 12, 23; Buhler v. Maddison, 109 Utah 267, 176 P.2d 118, 168 A.L.R. 177.

that such is the effect of many presumptions.[9] However, we have also recognized that other presumptions are not so eliminated but have the effect of placing on the disfavored party the burden of persuading the fact finder that the facts are contrary to the presumed facts; some by a preponderance of the evidence,[10] others by clear and convincing evidence,[11] and still others by proof beyond reasonable doubt.[12] In other words the measure of proof required to overcome some presumptions is that the fact finder be convinced by the evidence that the non-existence of the presumed fact is more probable than its existence, in others that its non-existence is very highly probable, and still others require that all reasonable doubt of its non-existence be eliminated.[13] The non-existence of the presumed facts under such presumptions must be established by the required measure of proof; otherwise, the trier of the facts must assume that they exist and there is no burden on the party relying on their existence to produce proof thereof to support a finding to that effect, other than to prove the basic facts of the presumption.

Our decision in this case is determined by our conclusion that this presump-

9. See cases cited in Note 8, also Mecham v. Allen, 1 Utah 2d 79, 85, 262 P.2d 285, 290–291; Tuttle v. Pacific Intermountain Express Co., Utah, 242 P.2d 764, 768–770; my concurring opinion in Gibbs v. Blue Cab, Utah, 249 P.2d 213, 217–9; State v. Green, 78 Utah 580, 591–597, 6 P.2d 177, 181–182; In re Newell's Estate, 78 Utah 463, 484–485, 5 P.2d 230, 237–239; Clark v. Los Angeles & S. L. R. Co., 73 Utah 486, 504–505, 275 P. 582; Ryan v. Union Pacific R. Co., 46 Utah 530, 538–539, 151 P. 71.

10. Walton v. Coffman, 110 Utah 1, 7–13, 169 P.2d 97, 100–3; Baldwin v. Nielson, 110 Utah 172, 176, 170 P.2d 179, 181; Bradley v. Miller, 109 Utah 538, 550, 167 P.2d 978, 984; State v. Steadman, 70 Utah 224, 233, 259 P. 326, 328–329.

11. Jardine v. Archibald, 3 Utah 2d 88, 279 P.2d 454, 456; In re Pilcher's Estate, 114 Utah 72, 79–84, and my concurring opinion at pages 90–91, 197 P.2d 143, 147–149, 152–153; Chamberlin v. Larsen, 83 Utah 420, 29 P.2d 355, 363.

12. This is the measure of persuasion usually required in criminal cases where the basic facts are that a person is being prosecuted for a crime, and the only Utah cases which I know of requiring such measure of persuasion. By section 703 of the A.L.I.'s Model Code of Evidence, this measure of persuasion is required to overcome the presumption of legitimacy of a child born in wedlock, but no such express provision is made to preserve the presumption of innocence in criminal prosecutions. This was undoubtedly omitted on the theory that such presumption was created by substantive law and not dependent on a rule of evidence for its existence. On that subject see Buhler v. Maddison, cited in Note 8 above. See also McCormick on Evidence, sec. 309, pp. 646–7.

13. For a discussion of this wording see Lovett v. Continental Bank & Trust Co., supra, and authorities therein cited, especially McCormick on Evidence, secs. 319, 320 and 321.

tion shifted the burden of persuasion onto the proponents of the will and was not eliminated by a prima facie showing to the contrary. If this presumption were thus eliminated the only evidence of fraud and undue influence was the showing that the deceased made legacies to her confidential advisers without disinterested independent advice thereon. This evidence contains the showing of the basic facts which gave rise to the presumption but even if we were to hold that such presumption were eliminated by a prima facie showing to the contrary, the evidence of such facts would not thereby be eliminated from the case.

■ In order to avoid confusion and misunderstanding of the nature and effect of presumptions, the distinctions between the various expressions used in connection therewith must be kept clearly in mind. For instance the expressions "burden of persuasion" and "burden of producing or going forward with the evidence" differ in that the former requires that the fact finder must be convinced by the evidence that the existing facts are in favor of the party who has such burden in order to find the issue of facts on that question in his favor, but the burden described in the latter expression is of temporary nature and is eliminated from the case by a prima facie showing of facts on such issue in favor of the party having such burden. Only a presumption which merely shifts the burden of producing evidence is eliminated or vanishes from the case upon a prima facie showing to the contrary. A presumption which shifts the burden of persuasion does not vanish from the case upon a prima facie showing but remains throughout the case to require the fact finder to decide such issue of fact against the party having such burden unless he is convinced by the required degree of proof or measure of persuasion that the facts on that issue are contrary to such presumption. So, in this case, since we hold that this presumption shifts the burden of persuasion that there was no fraud or undue influence onto the proponents of the will, the fact finder must find that issue against them unless he was convinced from the evidence that there was no fraud or undue influence.

■ Also much confusion has resulted from the failure to keep clearly in mind the distinction between a presumption which is eliminated by a prima facie showing to the contrary and the evidence showing the basic facts which give rise to the presumption. While such presumption vanishes and is eliminated from the case by such showing and thereafter such issue must be determined from the evidence, the evidence of the basic facts which give rise to such presumption is not eliminated from the case with the presumption. Such evidence as distinguished from the presumption remains in the case and should be considered by the fact finder in determining the existence of the presumed fact with at least as much weight or probative value

as it would have had, had no presumption ever been operative in the case.[14]

■ A presumption is the assumption of a fact required by a rule of law from the establishment of another fact or group of facts. It is not the facts on which it is based nor the inference to be drawn therefrom, but a rule of law fixing the legal consequences thereof. Neither such assumption nor rule of law, aside from the basic facts which give rise to the presumption, have any tendency in reason to prove the existence of the presumed fact and therefore cannot be weighed as evidence thereof,[15] but the above mentioned facts, which include the facts on which this presumption is based, show a self interest, motive and opportunity in the confidential advisers to practice fraud and undue influence on the decedent to induce her to make such legacies and are probative evidence of such presumed fact that there was fraud and undue influence. These facts had to be in evidence to give rise to the presumption, but they are not eliminated by the production of prima facie evidence of the non-existence of the presumed fact but remain in the case with at least the same probative proof of the presumed fact as they would have had, had no presumption become operative in the case, and may be so considered by the trier of the facts. The main purpose of presumptions is to shift the burden either of producing evidence or of persuasion and thereby make sure that the evidence showing the basic facts will be held sufficient to support a finding for the favored party if the disfavored party fails to satisfy his burden. This does not mean that the fact finder may consider or weigh the presumption as evidence. It means that a different rule of law applies in determining the facts under the presumption than without it. Under the presumption, if from all the evidence, the fact finder is not convinced that the facts are in accordance with the

14. See statement to that effect by Morgan in commenting on presumptions, Chapter 8, A.L.I.'s Model Code of Evidence, quoted in note 5 of my opinion in the Mecham case, supra, note 9. Even Mr. Justice Wolfe, who took issue with this concept in the Tuttle, Blue Cab and Mecham cases, finally said in the Mecham case at page 94 of 1 Utah 2d, at page 296 of 262 P.2d that "Such statement [by Morgan] is true when there is some logical connection between the basic fact and the inference sought to be drawn. * * *." See also McCormick on Evidence, sec. 311.

15. Rule 13 of the National Conference of Commissioners on Uniform State Laws, Uniform Rules of Evidence; see also Rule 703(2) of the A.L.I.'s Model Code of Evidence; my opinion in In re Pilcher's Estate, supra, note 8; Morgan's Some Observations Concerning Presumptions, 44 Harvard Law Review 906; Thayer's Preliminary Treatise on Evidence (1898); Wigmore on Evidence, sec. 2491. McCormick on Evidence, sec. 308, includes in the definition of presumptions permissive presumptions which is often called permissive inferences.

claims of the party against whom it operates, then he must find against such party. Without the presumption, if the fact finder is not convinced that the presumed facts are true, he must find that they are not true. We simply apply the rule of law that this presumption shifts the burden of persuasion to the fact situation. This is not weighing the presumption as evidence.

■ Since this presumption has the effect of shifting the burden of persuasion that these legacies were not induced by fraud or undue influence, then in determining whether the findings of the trial court are sustained by the evidence, we must assume that there was fraud or undue influence unless the trial court is convinced that no fraud or undue influence was exercised, or unless the evidence to that effect is so strong and convincing that a finding to the contrary would be unreasonable. This is the rule that we apply in this case and the rule required by Rule 14(a) of the Uniform Rules, and under it, the findings of the trial court must be affirmed.

Contrary to the cases and authorities to the effect that the presumption arising from a confidential relation is eliminated by a prima facie showing that there was no fraud or undue influence, we have held in other cases that such presumption is not so eliminated but that it places the burden of convincing the fact finder that there was no fraud or undue influence on the confidential adviser [16] by clear and convincing evidence. [17] Thus, in Peterson v. Budge, cited above, in a transaction between a doctor and his patient, we said [35 Utah 596, 102 P. 216]:

"And the rule is well settled that in actions of this kind, where these confidential relations are shown to exist, the burden of proof is cast upon the superior party to establish the perfect fairness, adequacy of consideration, and equity of the transaction. * * * Mr. Pomeroy, in volume 2, § 956, of his excellent work on Equity Jurisprudence, says: 'While equity does not deny the possibility of valid transactions between the two parties, yet, because every fiduciary relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and thereby overcoming the presumption.' * * *

16. Peterson v. Budge, 35 Utah 596, 609, 102 P. 211, 216; Omega Investment Co. v. Woolley, 72 Utah 474, 488, 271 P. 797, 802.

17. Jardine v. Archibald, 3 Utah 2d 88, 279 P.2d 454, 456.

"It having been shown that the confidential relation of physician and patient existed between the Budges and Peterson at the time the sale took place, the burden of proof shifted, and it became necessary for the Budges, in order to uphold the sale, to show that it was for an adequate consideration, and that the entire transaction on their part was in every particular fair, just, and equitable. * * *"

In Omega Investment Co. v. Woolley, cited above, we said in 72 Utah on page 486, 271 p. on page 801,

"The confidential relation being shown to exist, the burden devolved upon Woolley to show that, in the making of the transaction, the fullest and fairest explanation and communication was made to Baldwin of every particular in Woolley's breast; that the transaction itself was fair, and the consideration paid therefor adequate, before a court is justified in permitting the transaction to stand.

"'While equity does not deny the possibility of valid transactions between the two parties, yet because every fiduciary relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumption. * * *

"'* * * Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded. It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal; it may be moral, social, domestic, or merely personal.' 2 Pomeroy, Equity Jurisprudence, § 956."

That case contains several quotations which seem to indicate that such presumption can be overcome only by a showing of distinterested independent advice, and in Jardine v. Archibald, supra, it was contended that a finding in favor of a confidential adviser was not supported by the evidence without such a showing. There we rejected that contention, holding that clear and convincing evidence is sufficient, and stated on page 456 of 279 P.2d:

"It is well settled that where a fiduciary or confidential relationship exists between the donor and donee, equity raises a presumption against the validity of such transactions and the burden is cast upon the donee to prove their

validity and that there was no fraud or undue influence by proving affirmatively and by clear and convincing evidence compliance with equitable requisites. This is so because there is implied in every fiduciary or confidential relationship a superiority held by one of the parties over the other."

 There are minor distinctions of fact between the cases above considered, as well as the cases which support the contrary contention, and the case we are now considering, but the reasons for shifting the burden of persuasion are even stronger in this case and the cases which support the contrary contention than they are in the cases which hold that the burden of persuasion was shifted. In making each of these two lines of decisions we seem to have not noticed the contrary line of cases. In the will cases where the contest occurred after the maker's death and when the only available witness of what occurred between them was the confidential adviser, we held that the presumption is eliminated by a prima facie showing; whereas, in the other cases, where the confidant may be, and in two of them was, still living and able to testify, we held that the burden of persuasion is shifted to the confidential adviser. There is definitely a greater reason for shifting the burden of persuasion where the confiding person is not available

as a witness than where he is able to tell his version of such dealings. This is especially true since after the will is admitted to probate, a legatee is not precluded from testifying by the "Dead Man's Statute"[18] for his claim is held to not be in opposition to the deceased's estate. Usually the legatee's testimony alone is held to create prima facie evidence that no fraud or undue influence was exerted, and sometimes it is held to be sufficient to require a directed verdict. However, where an interested party is the only available witness of an event or occurrence which is determinative of his rights, it is usually held that the fact finder may reasonably disbelieve his testimony.[19]

Miller v. Livingstone, and In re Bryan's Estate cited above, hold that the basic facts of the presumption "raises a suspicion which ought to appeal to the vigilance of the court; * * * and that the court will cautiously and carefully examine into the circumstances which were attendant upon their execution, and will scan with a scrutinizing eye the evidence offered to procure their probate; * * *" [82 Utah 390, 25 P.2d 609] but such precautions are of no avail if the burden of persuasion is not on the confidential adviser and the court of last resort holds, as do those cases, that the other side must produce detailed evidence of facts and

18. See section 78–24–2(3), U.C.A.1953.

19. See Smith v. Industrial Comm. 104 Utah 318, 140 P.2d 314; White v. N. P.

Mettome Co., 2 Utah 2d 415, 275 P.2d 880; Gibbs v. Blue Cab, supra, note 4.

circumstance indicating fraud or undue influence.

Thus a definite need is shown that the presumption arising out of confidential dealings shall shift the burden of persuasion that there was no fraud or undue influence onto the confidential adviser. For the confidant relies on him and trusts him to give disinterested advice and counsel, and usually reveals to him his innermost secrets, thereby furnishing opportunity to take advantage of such trust and confidence. Self interest always furnishes a motive for such confidential adviser to take advantage of his superior position, and after the death of the person who confides in him, the adviser can testify of their secret dealings, knowing that no other witness of such events will be available.

█ Different decisions on this question recognize many different degrees of proof or persuasion as necessary or sufficient to overcome such presumption. Some hold with the Utah cases previously cited that such presumption is eliminated by a prima facie showing to the contrary;[20] others hold that such presumption shifts the burden of persuasion and still others make the additional requirement of clear and convincing evidence. Many cases emphasize the importance of a showing of disinterested independent advice, some of them indicating, and others directly holding that without such showing such presumption is irrebuttable.[21] As in the Jardine case, we recognize such a showing as an important factor in determining this question and reject the doctrine that without it such presumption is irrebuttable. For reasons previously pointed out we also reject the doctrine that this presumption is eliminated by a prima facie showing to the contrary. After careful study and consideration we conclude that this presumption shifts the burden onto the confidential adviser of persuading or convincing the fact finder by a preponderance of the evidence that no fraud or undue influence was exerted, or in other words, he has the burden of convincing the fact finder from the evidence that it is more probable that he acted perfectly fair with his confidant; that he made complete disclosure of all material information available and took no unfair advantage of his superior position than that he exerted fraud or undue influence to obtain the benefits in question. This is contrary to our holding in the Jardine case, which is supported by the California cases and some other decisions that clear and convincing evidence to the contrary

20. See Miller v. Livingstone, 31 Utah 415, 88 P. 338; In re George's Estate, 100 Utah 230, 112 P.2d 498; also In re Hagan's Estate, 143 Neb. 459, 9 N.W.2d 794, 154 A.L.R. 573, and note on this question 600–602.

21. See Omega Investment Co. v. Woolley, 72 Utah 474, 271 P. 797; Peyton v. William C. Peyton Corp., 23 Del.Ch. 321, 7 A.2d 737, 123 A.L.R. 1482, and note on this question 1505–1520.

is necessary to overcome such presumption.[22] We reach this conclusion because we feel that the rule is more clear and understandable than the rule requiring clear and convincing evidence; that this rule is more apt to produce a just result and is more generally recognized as the correct rule governing this situation.[23]

We adopt this rule not as punishment to the lawyer or other confidential adviser who accepts gifts or other possible benefits from a person who reveals to him his secrets and relies on him for disinterested advice and counsel but because in most cases it is apt to produce a correct finding of the facts, for a confidential adviser who practices fraud or undue influence has a strong motive for concealing the truth and the person whose confidence he betrays, even though available as a witness, does not know the schemes and plans used against him to accomplish the desired result. Under such a rule we must affirm the trial court's findings, for clearly finding that the evidence failed to convince by a preponderance of the evidence, that no fraud or undue influence induced these legacies, or that the existence of such inducement was more improbable than it was probable was not unreasonable in view of all of the evidence.

The expression that there is a "presumption of innocence" is frequently used even in civil cases where misconduct is involved, but it is usually used to indicate a permissible inference and not a mandatory presumption.[24] But even where a presumption is indicated, such presumption nullifies other presumptions only in cases where the facts giving rise to the presumption have no tendency to establish guilt and are not by their nature opposed to innocence.[25] Such presumption of fraud and undue influence is everywhere recognized but we know of no case which holds that such presumption is nullified by the presumption of innocence. If such were the effect of a presumption of innocence, it would com-

22. See Jardine v. Archibald, 3 Utah 2d 88, 279 P.2d 454, 456; In re Witt's Estate, 198 Cal. 407, 245 P. 197; In re Phillipi's Estate, 76 Cal.App.2d 100, 172 P.2d 377; McDonald v. Hewlett, 102 Cal.App. 2d 680, 228 P.2d 83, 24 A.L.R.2d 1281; Roberts v. Wachter, 104 Cal.App.2d 271, 231 P.2d 534; In re Heim's Estate, 136 N.J.Eq. 138, 40 A.2d 651, 657; Nicholson v. Kingery, 37 Wyo. 299, 261 P. 122.

23. See Bancroft v. Otis, 91 Ala. 279, 8 So. 286, 24 Am.St.Rep. 904; Coghill v. Kennedy, 119 Ala. 641, 24 So. 459; Goodno v. Hotchkiss, 88 Conn. 655, 92 A. 419; Walker v. Hunter, 17 Ga. 364; Prinz v. Schmidt, 334 Ill. 576, 166 N.E. 209; In re Eldred's Estate, 234 Mich. 131, 207 N.W. 870; Pulitzer v. Chapman, 337 Mo. 298, 85 S.W.2d 400; In re Bartles' Will, 127 N.J.Eq. 472, 13 A.2d 642; Id., 129 N.J.Eq. 280, 19 A.2d 17; In re Everett's Will, 153 N.C. 83, 68 S.E. 924; Hunter v. Battiest, 79 Okl. 248, 192 P. 575; Hartman v. Stickler, 82 Va. 225.

24. McCormick on Evidence, sec. 309, p. 649.

25. Jones Commentaries on Evidence, 2d Ed., sec. 359.

pletely nullify all presumptions of fraud and undue influence for in every such case the confidential adviser is presumed to be guilty of betraying the confidence placed in him. It would be useless to hold that there is a presumption of fraud and undue influence against him which is nullified by a contrary presumption of innocence.

The case is remanded with directions that the findings and decree be corrected in accordance with the views herein expressed, but that the decision of the trial court be affirmed to the effect that the bequests to Macfarlane and Kostopulos are null and void for fraud and undue influence.

Each party to bear his own costs.

McDONOUGH, C. J., and CROCKETT and HENRIOD, JJ., concur.

HOYT, District Judge (concurring in part and dissenting in part).

I agree with that part of the prevailing opinion which holds that Gail Swan did not lack testamentary capacity. I also agree that a presumption of fraud arises where a confidential adviser is made the beneficiary in a will of a person who relies on his advice and counsel in the making of the will. I also agree that the defendant Macfarlane made a prima facie showing to overcome that presumption. I do not agree with the holding in the opinion that the presumption was not eliminated by such prima facie showing. And, since a rule of evidence adopted by a court of last resort has such far-reaching and lasting consequences, I deem it proper to state my reasons for disagreement.

The opinion states that there is a conflict in the Utah cases on the effect of the presumption arising from a confidential adviser receiving gifts, bequest or other benefits from his dealings with the person confiding in him, and that some cases indicate that upon the making of a prima facie showing to overcome the presumption of fraud the presumption is eliminated and the issue thereafter must be determined on the evidence as if no presumption had arisen. It is also said that under such rule the trial court's finding of fraud and undue influence is probably not supported by the evidence. I would go further than that on both points. I believe that the great weight of Utah cases is to the effect that a presumption is eliminated when evidence is presented to rebut it, and that the case should then be decided upon the evidence. As to the evidence in the case, I believe that a careful study of the transcript and the findings of fact and memorandum decision of the trial court will show that there is no evidence and no finding by the court of any act of deceit, deception, concealment, misrepresentation, solicitation or coercion on the part of Macfarlane or of any attempt on his part to encourage or create discord between Gail Swan and her sister Theo or to persuad Gail to omit Theo from her will. There is no evidence or finding of flattery or flirtatious conduct. (With regard to Kostopulos this was quite different. There were both evidence and

findings by the court of fawning, flattery and deceit on his part and efforts to create discord between Gail and Theo. The court expressly found that Kostopulos' constant attentions and pretended friendship for Gail Swan were prompted by the motive of securing pecuniary benefits.) As to Macfarlane there was uncontradicted testimony of disinterested witnesses that Gail had stated to them that Macfarlane was one of her best friends, that she desired to help him and that she proposed to remember him in her will; that she did not expect to leave much of her property to her sister Theo. She knew that Theo had received property of large value from her father, mother and grandfather and she had reason to believe that Theo's husband was wealthy. The will was executed five years before Gail's death and each of the codicils, more than a year prior thereto. The last codicil was executed immediately following an hour-long interview with the city physician of Salt Lake City and a prominent psychiatrist. They signed as witnesses to the codicil. During that interview they had questioned Gail as to her desires in relation to disposition of her property and she had named Macfarlane as one of the persons she desired to remember in her will. With this uncontradicted testimony of disinterested witnesses coupled with Macfarlane's unequivocal denials of any persuasion or solicitation on his part, it seems to me that the holding of the trial court was clearly unreasonable as to Macfarlane and Ada Bridge and must have resulted from an erroneous view of the effect to be given to the presumption or otherwise to the court's finding that Gail lacked testamentary capacity.

Before discussing the effect to be given to the presumption, I desire to refer to the statement in the opinion that in a law case the appellate court is bound by the findings of the trial court unless such findings are unreasonable in view of all of the evidence. In applying that rule we should not forget that it refers to findings of fact and not conclusions of law. This leads to the inquiry: is a general finding that a will was induced by fraud or undue influence a finding of fact such as is governed by the rule? This court in In re Hanson's Estate, 87 Utah 580, 52 P.2d 1103, 1114, quoted with apparent approval the following from the Supreme Court of Michigan:

"'What degree of mental capacity is necessary to enable a testator to make a valid will, to what extent and with what degree of perfection he must understand the will and the persons and property affected by it, or to what extent his mind must be impaired to render him incapable, is a question of law exclusively for the Court, with which the witnesses have nothing to do. And it is a question of law of no little difficulty, which calls for the highest skill of competent jurists, and upon which the ablest courts are not

entirely agreed.' " Kempsey v. Mc-Ginniss, 21 Mich. 123, at page 141.

Whether a finding of lack of testamentary capacity or of undue influence should be considered a finding of fact or a conclusion of law or a mixed finding of fact and law, such a finding is necessarily based upon subordinate facts and it is therefore proper for a reviewing court to ascertain whether the finding is consistent with subordinate facts found or with the evidence where the evidence is not conflicting.

"When the judgment of the court below is based upon a deduction from other facts, or upon a conclusion drawn from subordinate facts, the conclusion is subject to revision and to correction if erroneous." 3 Am.Jur. 472, sec. 905.

"The rule that an appellate court will not disturb the findings of fact made by a trial judge unless they are manifestly against the weight of the testimony does not apply if he committed an error of law which manifestly influenced or controlled his conclusion of fact, as where he made a mistake as to the onus probandi or commits error in the exclusion of evidence. The appellate court will always review the findings of the trial judge when they were manifestly controlled or influenced by errors of law. It is not bound by the finding of the trial court on oral evidence based upon an erroneous view of the law as applied to the facts." Ib. sec. 904.

"Also when there is a general finding only, the appellate court has the right to consider whether there is any substantial evidence to support each finding of fact implicit in the general finding." 9 Bancroft Code Practice and Remedies, sec. 7310.

If the probative facts, as found by the court, are repugnant to the ultimate fact, the latter is invalidated by the former and on appeal such a finding of ultimate fact will not be sustained. Ibid. Hammond Lumber Co. v. Barth Inv. Corp., 202 Cal. 601, 262 P. 29.

Going now to the question as to what effect should be given to a presumption, it is stated in the opinion that in some cases this court has held that the only effect of a presumption is to place on the disfavored party the burden of producing prima facie evidence to the contrary and that it is firmly established that such is the effect of many presumptions but that as to other presumptions the court has recognized that they are not eliminated but have the effect of placing upon the disfavored party the burden of persuading the fact finder that the facts are contrary to the presumption—some by a preponderance of the evidence—others by clear and convincing evidence—and others by proof beyond a reasonable doubt. The opinion then goes on to hold that the presumption of fraud and undue influence involved in this case is of a kind that is not eliminated by rebutting evidence. Is this not tantamount to saying

that the presumption remains in the case and must be given consideration by the jury in connection with all the evidence? And if that is true, how will the court explain to the jury what consideration or what weight should be given to the presumption? Are we not here going into a field of refined reasoning which thoroughly bewilders jurors—and judges? Are we not opening up a field for zealous counsel to argue both at trial and on appeal abstract principles and rationalizations which mislead jurors and judges alike?

I am unequivocally opposed to a further perpetuation of the confusion which results from a rule which holds that various effects shall be given to various presumptions. As a trial court judge I most earnestly urge that such a rule places an unconscionable burden upon trial judges and, in jury cases results in unlimited confusion of jurors. I am strongly in favor of retention of the rule heretofore repeatedly announced by this court and adopted by the American Law Institute that when rebutting evidence is introduced, the issue should be decided upon the evidence—without having the jury or trier of the facts confused by incomprehensible explanations as to the effect of a presumption or as to the quantum of proof required to overcome a given presumption. I quote the following from Buckley v. Francis, 78 Utah 606, 6 P.2d 188, 191:

"In two cases recently decided by this court, the legal effect of a presumption is discussed and decided. State v. Green, [78 Utah 580] 6 P.2d 177; In re Newell's Estate, [78 Utah 463] 5 P.2d 230. It is held in each of those cases and other cases there cited that a presumption is a rule of law which may be relied upon as establishing a prima facie case for the party in whose favor the presumption exists until, and only until, the opposing party goes forward with some evidence which tends to overcome the presumption, that a presumption cannot stand in the face of facts, and that, when evidence of facts appears in the cause, the presumption, having served its purpose, passes utterly out of consideration of the trier of the facts. In those cases we condemned instructions which directed the jury to undertake the impossible task of considering and weighing presumptions as if they were evidence."

The case of State v. Green [6 P.2d 182], cited in the above, quotes from and expressly approves the pronouncements of Thayer, Wigmore and Jones upholding the foregoing rule.

"'The better reasoned authorities hold that a presumption is not evidence of a fact, but purely a conclusion, having no probative force, and designed only to sustain the burden of proof until evidence is introduced tending to overcome it.' Jones, Comm. on Evidence (2d Ed.) § 30, p. 59.

" 'While it is obvious, then, that a presumption, i. e., the assumption, intendment, taking-for-granted, which we call by that name, accomplishes, for the moment at any rate, the work of reasoning and evidence, it should be remarked, as I have said before, that neither this result, nor the rule which requires it, constitutes, in itself, either evidence or reasoning. This might seem too plain to require mention if it were not for the loose phraseology in which courts sometimes charge the jury, leaving to it in a lump "all the evidence and the presumptions," as if they were capable of being weighed together as one mass of probative matter. The error is not limited to trial courts. Such a remark might pass as merely a loose and inaccurate way of saying that it accomplishes the result of evidence or reasoning, if it were not that sometimes judges go on to declare that the presumption is in itself so much probative matter, to be weighed as against other probative matter, i. e., evidence in the proper sense of the word, and make this notion the basis of a decision. Such an error is quite too grave and harmful to be overlooked.' Law of Evidence, Thayer, pp. 337–339.

" 'Nevertheless, it must be kept in mind that the peculiar effect of a presumption "of law" (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion in the absence of evidence to the contrary from the opponent. If the opponent does offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule.' Wigmore on Evidence (2d Ed.) vol. 5, § 2491, pp. 451, 452."

In considering the point at issue, it should be remembered that some states have statutes which have been construed to bind the courts to a rule that a presumption can or must be considered as evidence. California has such a statute, and decisions of the California courts should be weighed in the light of that statute. See Smellie v. Southern Pacific Ry. Co., 212 Cal. 540, 299 P. 529, 532; People v. Milner, 122 Cal. 171, 54 P. 833, 95 A.L.R. 885. Utah has no such statute and has repeatedly held that a presumption is not evidence.

The American Law Institute rule is as follows:

"Rule 704. Effect of Presumptions.

"(1) Subject to Rule 703 [relating to presumption of legitimacy] when the basic fact of a presumption has been established in an action, the existence of the presumed fact must be assumed unless and until evidence has been introduced which would support a finding of its non-existence or the basic fact of an inconsistent presumption has been established.

"(2) Subject to Rule 703, when the basic fact of a presumption has been established in an action and evidence has been introduced which would support a finding of the non-existence of the presumed fact or the basic fact of an inconsistent presumption has been established, the existence, or non-existence of the presumed fact is to be determined exactly as if no presumption had ever been applicable in the action."

The comment appended to the rule in the A.L.I. Model Code (page 314) is as follows:

"Comment on Paragraph (1):

"This states the view of practically all text-writers, and is universally applied by the courts when they are using the word 'presumption' carefully and not as a mere synonym of 'inference.'

"Comment on Paragraph (2):

"a. Comparison with existing law. This Rule is in accord with the decisions of the United States Supreme Court and of the courts of last resort in a number of states. It is supported by countless dicta and has the approval of distinguished commentators. It is not subject to attack for unconstitutionality under Western & Atlantic Railroad v. Henderson, 279 U.S. 639, 49 S. Ct. 445, 73 L.Ed. 884, or kindred decisions.

"b. Application and reasons. A presumption, to be an efficient legal tool, must (1) be left in the hands of the judge to administer, and not be submitted to a jury for decision of the question when it is 'rebutted' or ceases to have compelling force; (2) be so administered that the jury never hear the word presumption used since it carries unpredictable connotations to different minds; and (3) be embodied in a rule easy of application by the judges in the hurry of trial. This Rule meets these tests. It expresses the Thayerian theory that the sole procedural effect of a presumption is to put upon the party asserting the non-existence of the presumed fact the burden of producing evidence of its non-existence."

A further comment on page 309 recites that judicial opinions reveal at least eight separate and divergent views as to the effect of presumptions, and then cogently states as a reason for adoption of a simple rule in the above form the following:

"If the confusion in the authorities is to be escaped by legislation which gives effect to the reasons which have caused the courts to create the various presumptions, no single rule, no simple rule can be devised. Presumptions must be classified, and each class must be given an effect commensurate with the strength of the reasons which induced its creation. This calls for an almost impossible performance. Each of the myriads of presumptions here-.

tofore recognized by the courts would have to be carefully studied and assigned its proper class; and provision would have to be made for an arbitrary assignment of presumptions created hereafter and not judicially or legislatively classified when created. The cure would probably be as bad as, if not worse than, the disease. A simple solution must be sought even though it may not be as rational as a complicated one."

My experience as a trial court judge convinces me that the American Law Institute rule is far less confusing and far more understandable and realistic, particularly in jury cases, than the rule recommended by the Commissioners on Uniform State Laws which is favored by Mr. Justice Wade. Whenever the word "presumption" is injected into instructions to a jury it is impossible to predict how jurors will be influenced by it. The fact that judges and appellate courts have constantly debated and disagreed as to its meaning and effect ought to convince trial judges that it should never be incorporated in instructions to a jury except in criminal cases involving the presumption of innocence and in cases involving the presumption of legitimacy of a child born in wedlock. If any other exceptions are to be made they should be specifically designated and catalogued. I think this is necessary because of the limitless, number of presumptions with which courts are requested to deal and the impossibility of correctly deciding during the course of the trial what effect is to be given to a particular presumption—under a rule which provides that different presumptions have different effects.

In this connection I think it is clearly illogical to say that the presumption of fraud is a presumption standing in a class which calls for greater proof for its elimination than other presumptions. I have no greater sympathy nor any less contempt than other members of the court for a confidential adviser who procures a bequest under a will be means of fraud or undue influence. I agree heartily with language in opinions declaring that attorneys, confidential advisers and fiduciaries have a duty to act with utmost fidelity and good faith in dealing with one who reposes trust in them and that when found guilty of violation of that duty the law should deprive them of the fruits of their contemptible conduct. But that is not the question before the court. The questions here are: Was fraud in fact perpetrated? And, what are proper rules of evidence for determining whether there was fraud? Countless cases have said that fraud is odious and will not be presumed. Here we are dealing with an exception which says that if a confidential adviser who draws a will receives a bequest thereunder, a presumption arises that it was procured by fraud or undue influence. Shall we go further and in effect say that the jury or trier of the fact shall not only give consideration to the basic facts which give rise to the presumption (viz. motive and opportunity)

but shall give added (and mystical) weight to these facts by keeping in mind that the law has created a presumption of fraud which is not dissipated by the production of evidence in rebuttal but must be weighed along with the evidence? Before answering, let us consider a universally accepted general rule that in the absence of proof to the contrary, men are presumed to act honorably.

"Perhaps there is no presumption more highly favored in the law than that of innocence * * *. The favor with which this presumption is regarded in the law is illustrated in this, that when misconduct or crime is alleged, whether in a criminal or civil suit, whether in a direct proceeding to punish the offender or in some collateral manner, the accused is presumed innocent until proved guilty. This is also illustrated in the fact that other presumptions so aften have to yield to that of innocence, and by the fact that although ordinarily the burden of proof is on the one asserting the affirmative of the issue, yet if proof of a negative is necessary to establish guilt such proof must be made * * *. As stated by Taylor (Taylor Evid. 10th Ed. sec. 112) 'The right which every man has to his character, the value of that character to himself and his family and the evil consequences which would result to society if charges of guilt were lightly entertained or readily estab-

lished in courts of justice—these are the real considerations which have led to the adoption of the rule that all imputations of crime must be strictly proved. The rule then is recognized alike by all tribunals, whether civil or criminal, and is equally effective in all proceedings, whether the question of guilt be directly or incidentally raised.'" Jones, Law of Evidence (3d ed.) sec. 12.

"In actions involving fraud, as in other cases where the facts present a double aspect, one consistent with fair dealing and the other involving dishonesty of purpose, the court, unless the scale decidedly preponderates for the latter, will strike the balance in favor of honesty and innocence." Ib. sec. 13.

A further objection I have to the prevailing opinion is that certain language in it appears to commit this court to a position which conforms neither to the rule adopted by the American Law Institute nor to that recommended by the Commissioners on Uniform State Laws. By saying that the effect of many presumptions is eliminated upon production of prima facie evidence to the contrary but that other presumptions are not so eliminated but have the effect of placing on the disfavored party the burden of persuading the fact finder that the facts are contrary to the presumed facts—some by a preponderance of

the evidence—others by clear and convincing evidence—others by proof beyond a reasonable doubt—it appears to me to attempt to reconcile the irreconcilable expressions found in past decisions of this and many other courts and adopt a middle ground which is not tenable under either the A.L.I. rule or the rule of the Commissioners on Uniform Laws. I think it obvious that we should adopt one or the other of the proposed rules and, as heretofore stated, I am strongly in favor of the rule of the American Law Institute which in my opinion is unquestionably more simple and understandable for trial judges and immeasurably more practical and less confusing in jury cases. Appellate courts have too long permitted conflicting rules relating to effect of presumptions to confuse trial judges and jurors and give to learned counsel an excuse for arguing mystifying abstractions when a presumption is involved in a case. If there are any presumptions other than the presumption of innocence and the presumption of legitimacy of a child born in lawful wedlock which call for special consideration in opposition to the general rule as to effect of presumptions, let us specifically designate them. I do not think that the presumption of fraud is one which calls for such special designation.

In my opinion the decision of the trial court should be reversed and the will declared valid except as to the bequest and devise to Kostopulos.

WORTHEN, J., does not participate.